## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Jason H., | Case No. 21-cv-174 (KMM/ECW) |
| Plaintiff, | |
| v. | **REPORT AND RECOMMENDATION** |
| Kilolo Kijakazi, Acting Commissioner of Social Security, | |
| Defendant. | |

This matter is before the Court on Plaintiff Jason H.'s ("Plaintiff") Motion for Summary Judgment (Dkt. 20) and Defendant Acting Commissioner of Social Security Kilolo Kijakazi's ("Defendant") Motion for Summary Judgment (Dkt. 22). Plaintiff is seeking judicial review of a final determination by the Social Security Administration denying his application for supplemental security income ("SSI") pursuant to Title XVI of the Social Security Act, 42 U.S.C. § 1381 et *seq.* This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons stated below, the Court recommends that Plaintiff's Motion be denied, and that Defendant's Motion be granted.

## I.    PROCEDURAL BACKGROUND

On December 12, 2018, Plaintiff filed an application seeking SSI benefits alleging that he became disabled on January 1, 2011, due to diabetes, lower back issues, foot

issues, blood clots, depression, and anxiety.  (R. 204-11, 226).[1]  Plaintiff's application for

SSI benefits was originally denied and then denied upon reconsideration, and Plaintiff

requested a hearing before an administrative law judge.  (R. 127-31, 135-38.)

Administrative Law Judge Michael Scurry ("ALJ") held a hearing with Plaintiff,

who was represented at the hearing by counsel, on March 3, 2020.  (R. 10.)  On March

17, 2020, the ALJ issued an unfavorable decision.  (R. 10-23.)

In making this determination, the ALJ followed the five-step sequential evaluation

process pursuant to 20 C.F.R. § 416.920(a).  At the first step, the ALJ found that Plaintiff

did not engage in substantial gainful activity since his "December 6, 2018" application

date.[2]  (R. 12.)  At step two, the ALJ found that Plaintiff suffered from the following

severe impairments: left foot impairment status post osteotomies of the left 2nd and 3rd

toe proximal phalanges, left ankle osteochondritis dissecans lesion, degenerative arthritis,

diabetes mellitus, obesity, and epididymitis.  (*Id.*)  The ALJ also found that Plaintiff's

medically determinable mental impairments of bipolar disorder and generalized anxiety

disorder were non-severe, as they did not cause more than minimal limitations to

Plaintiff's ability to perform basic mental work activities.  (R. 13.)

At step three, the ALJ found that Plaintiff did not have an impairment or

combination of impairments that met or medically equaled the severity of one of the

listed impairments in 20 CPR Part 404, Subpart P, Appendix 1.  (R. 14.)

---

[1]     The Social Security Administrative Record ("R.") is available at Dkt. 19.

[2]     The ALJ stated the application date was December 6, 2018 (R. 10, 12), but
Plaintiff's application date is December 12, 2018 (Dkt. 19-5 at 1; R. 204-11.)

The ALJ then assessed Plaintiff with the following residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he can never climb ladders, ropes, and scaffolds, but can occasional [sic] climb ramps and stairs, and balance. He can frequently stoop, kneel, crouch, and crawl. He should avoid concentrated exposure to hazards such as unprotected heights.

(R. 15.)

The ALJ concluded, based on the above RFC and the testimony of the vocational expert ("VE"), that Plaintiff could not perform his past relevant work. (R. 21.) The ALJ also determined after consulting the VE at the hearing that given Plaintiff's age, education, work experience, and RFC, there were other jobs that exist in significant numbers in the national economy that he could perform the requirements of, including price marker (DOT #209.587-034), which is an unskilled, light level job with an SVP of 2, with 123,000 of these positions in the national economy; routing clerk (DOT #222.687-022), which is an unskilled, light level job with an SVP of 2, with 96,000 of these positions in the national economy; and office helper (DOT #239.567-010), which is an unskilled, light level job with an SVP of 2, with 13,000 of these positions in the national economy. (R. 22.)

Accordingly, the ALJ deemed Plaintiff not disabled. (R. 22.) Plaintiff requested review of the decision and the Appeals Council denied Plaintiff's request for review, which made the ALJ's decision the final decision of the Commissioner. (R. 1-6.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).

The Court has reviewed the entire administrative record, giving particular attention to the facts and records cited by the parties. The Court will recount the facts of record only to the extent they are helpful for context or necessary for resolution of the specific issues presented in the parties' motions.

## II.    RELEVANT RECORD

On April 11, 2018, Plaintiff saw Patrick McGuire, M.D., for his back pain and a medication update. (R. 588.) Dr. McGuire observed that Plaintiff, "in general. . .is very high energy and talks very quickly." (*Id.*) Plaintiff told Dr. McGuire that his mind was always racing, especially at night, which affected his sleep. (*Id.*) Plaintiff endorsed impulsive behaviors. (*Id.*) In a subsequent appointment on May 4, 2018, Dr. McGuire noted:

> More concerning today is mood. Patient feels very anxious and restless. We have been holding off on starting any SSRI or SNRI due to concerns of possible bipolar disorder and tipping more into mania. We have put a consult in with psychiatry, but his appointment is not until next month. Patient finds he struggles throughout the day. Still very restless, talking, on edge. Having trouble sleeping.

(R. 573.)

On May 14, 2018, Plaintiff underwent a Rule 25 assessment. (R. 374.) Plaintiff complained that he suffered from deficits with problem solving and concentration. (R. 381.) He also reported feeling sad, depressed, and hopeless about the future due to his recent prison time, as well as anxiety resulting from being scared "about failing and going back for an eighth time into drugs." (*Id.*)

Plaintiff began treating with psychiatrist Sujit Varma, M.D., in May of 2018

related to thought process issues. (R. 362.) The review of symptoms with Plaintiff on May 11, 2018 included reports of low mood, decreased interest, irritability, crying, low energy, distractibility, spending, decreased need for sleep, increased activity, disturbed sleep, decreased concentration, and muscle tension. (R. 362.) Dr. Varma's mental examination of Plaintiff showed that he had an appropriate appearance; he was easily engaged; he showed appropriate eye contact; had normal motor activity; his speech was normal; his mood was congruent; his thought process and content was normal; his association was intact; he had an average fund of knowledge; and his concentration, memory, cognition, insight, and judgment were normal. (R. 366.) Plaintiff was diagnosed with bipolar disorder, unspecified, and generalized anxiety disorder. (R. 367.) Dr. Varma prescribed Seroquel[3] for Plaintiff. (*Id.*)

On July 27, 2018, Dr. Varma noted that Plaintiff was jittery and got into arguments with his girlfriend. (R. 360.) Plaintiff asserted that he did not like being on Seroquel because it made him groggy. (*Id.*) In lieu of Seroquel, Plaintiff was prescribed with Lamictal,[4] as well as Klonopin[5] for his anxiety. (R. 360.) Diagnoses included bipolar disorder and generalized anxiety disorder. (R. 360-61.) Dr. Varma's medical examination of Plaintiff showed that he presented no risk to himself or others, he had an

---

[3]   Seroquel is prescribed for bipolar disorder, major depression and schizophrenia. THE PILL BOOK, 961 (15th ed. 2012).

[4]    Lamictal is prescribed for adult epilepsy, partial seizures, and bipolar disorder. THE PILL BOOK, 667 (15th ed. 2012).

[5]   Klonopin is prescribed for anxiety, tension, fatigue, agitation, muscle spasms, and seizures. THE PILL BOOK, 158 (15th ed. 2012).

appropriate and neat appearance, his attention and concentration were normal, he showed good recent and remote memory, his eye contact and speech were normal, he showed appropriate behavior, his thought process was logical and coherent, he showed good insight and judgment, he did not suffer from any hallucinations or delusions, and his mood was blunted. (R. 360.)

Plaintiff was again seen by Dr. Varma on December 5, 2018, who found that Plaintiff presented no risk to himself or others, he had an appropriate and neat appearance, and his attention and concentration were normal. (R. 356.) He showed good recent and remote memory, his eye contact and speech were normal, he showed appropriate behavior, his thought process was logical and coherent, he showed good insight and judgment, did not suffer from any hallucinations or delusions, and his mood was blunted. (*Id.*) The diagnosis for Plaintiff included bipolar disorder, unspecified, and generalized anxiety disorder. (R. 356-57.) Plaintiff's GAF score was 50.[6] (R. 357.)

On December 20, 2018, Plaintiff reported being very social and meeting up with individuals weekly. (R. 397, 628.) On December 27, 2019, Plaintiff reported having

---

[6]    "The GAF scale, which is described in the [Diagnostic and Statistical Manual of Mental Disorders ("DSM") ] DSM-III-R (and the DSM-IV), is the scale used in the multiaxial evaluation system endorsed by the American Psychiatric Association. It does not have a direct correlation to the severity requirements in our mental disorders listings." Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50746-01 (Aug. 21, 2000), 2000 WL 1173632; *see also Reed v. Comm'r, Soc. Sec. Admin.*, 750 Fed. Appx. 506, 2019 WL 421739 *1 (8th Cir. Feb. 4, 2019) (per curiam); *Wright v. Colvin*, 789 F.3d 847, 855 (8th Cir. 2015) ("Additionally, substantial evidence supports the ALJ's decision not to give weight to Wright's GAF score because GAF scores have no direct correlation to the severity standard used by the Commissioner.") (citations omitted).

social contacts every day.  (*Id.*)

In January and February 2019, Plaintiff claimed to have supportive family and friends.  (R. 628.)

On January 22, 2019, State Agency psychologist Kathleen O'Brien, using the psychiatric review technique, opined that Plaintiff's bipolar and anxiety disorders were non-severe, finding mild limitations to his ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  (R. 104-05.)

Plaintiff was seen by Dr. Varma on March 4, 2019, who found that he presented no risk to himself or others, he had an appropriate and neat appearance, his attention and concentration were normal, he showed good recent and remote memory, his eye contact and speech were normal, he showed appropriate behavior, his thought process was logical and coherent, he showed good insight and judgment, did not suffer from any hallucinations or delusions, and his mood was blunted.  (R 686.)  The diagnosis for Plaintiff included bipolar disorder, unspecified and generalized anxiety disorder.  (R. 687.)  Plaintiff's GAF score was 50.  (*Id.*)  It was noted that Plaintiff was not taking medications as prescribed, which included Suboxone,[7] Cymbalta,[8] Nuvigil[9] for alertness,

---

[7]     Suboxone is prescribed for narcotic and alcohol addiction.  THE PILL BOOK, 818 (15th ed. 2012).

[8]     Cymbalta is prescribed for major depressive order, generalized anxiety disorder, and social anxiety disorder.  THE PILL BOOK, 1204 (15th ed. 2012).

[9]     Nuvigil is prescribed for narcolepsy.  THE PILL BOOK, 778 (15th ed. 2012).

and Buspar.[10]  (R. 686.)

On March 4, 2019, Dr. Varma also provided a medical opinion for Hennepin County related to Plaintiff.  (R370-71.)  Dr. Varma had last seen Plaintiff on the same date.  (R. 370, 502.)  According to Dr. Varma, Plaintiff was suffering from bipolar disorder and generalized anxiety, expected to last his lifetime.  (R. 371.)  Dr. Varma also noted mood swings.  (R. 371.)  Dr. Varma opined that Plaintiff could not work and should apply for disability benefits.  (*Id.*)

During a March 4, 2019 counseling session, Plaintiff represented that he had not experienced any problems with his mental health that week.  (R. 620.)

On April 3 and 20, 2019, Plaintiff was seen in the emergency department for back pain, during which he showed a normal affect as part of his psychiatric exam.  (R. 405, 554.)

On January 22, 2019, State Agency psychologist Marci Mylan, using the psychiatric review technique as part of reconsideration of Plaintiff's application for benefits, opined that Plaintiff's bipolar and anxiety disorders were non-severe, finding a mild limitation to his ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself.  (R. 118-19.)

On May 1, 2019, Plaintiff again saw Dr. Varma.  (R. 684.)  Plaintiff noted that he was no longer taking Cymbalta because he did not notice any benefits.  (*Id.*)  Plaintiff was also taking Suboxone for his pain and Klonopin.  (*Id.*)  Dr. Varma provided Nuvigil

---

[10]     Buspar is prescribed for anxiety or generalized anxiety disorder.  THE PILL BOOK, 211 (15th ed. 2012).

for alertness and Buspar.  (*Id.*)  Dr. Varma found that Plaintiff presented no risk to himself or others, he had an appropriate and neat appearance, and his attention and concentration were normal.  (*Id.*)  He showed good recent and remote memory, his eye contact and speech were normal, he showed appropriate behavior, his thought process was logical and coherent, he showed good insight and judgment, he did not suffer from any hallucinations or delusions, and his mood was blunted.  (*Id.*)  The diagnoses for Plaintiff included bipolar disorder, unspecified, and generalized anxiety disorder.  (R. 684-85.)  Plaintiff's GAF score was 50.  (R. 685.)  Dr. Varma's mental functioning assessments for Plaintiff were similar on July 31, 2019; September 27, 2019; and December 10, 2019.  (R. 678-79, 680-81, 682-83.)

On May 30, 2019, Plaintiff reported talking to his brothers, including one he had not seen in 15 years.  (R. 640.)

It was noted in a September 11, 2019 clinical progress note that Plaintiff had a steady girlfriend.  (R. 659.)

On September 27, 2019, Dr. Varma filled a medical source statement of ability to do work-related activities (Mental) for Plaintiff.  (R. 505-06.)  Dr. Varma opined that Plaintiff had mild limitations with respect to his ability to understand, remember, and carry out short instructions; a marked limitation as to his ability to carry out detailed instructions; and extreme limitations as to his ability to understand and remember detailed instructions, as well as his ability to make judgments on simple work-related decisions.  (R. 505.)  The medical findings supporting this assessment, according to Dr. Varma, were that Plaintiff could not concentrate due to his depression and that he would

get anxious at work and relapse.  (R. 505.)  In addition, Dr. Varma opined that Plaintiff

had a moderate limitation with interacting appropriately with the public; moderate

limitations as to his ability to interact appropriately with co-workers, responding to work

pressures, and changes in work routine; and an extreme limitation as to his ability to

appropriately interact with supervisors.  (R. 506.)  Dr. Varma pointed to Plaintiff's

"mood issue" in support of this assessment.  (*Id.*)

### III.    LEGAL STANDARD

Judicial review of an ALJ's denial of benefits is limited to determining whether

substantial evidence on the record as a whole supports the decision, 42 U.S.C. § 405(g);

*Chismarich v. Berryhill*, 888 F.3d 978, 979 (8th Cir. 2018), or whether the ALJ's

decision results from an error in law.  *Nash v. Comm'r, Soc. Sec. Admin.* 907 F.3d 1086,

1089 (8th Cir. 2018).  As recently defined by the Supreme Court:

> The phrase "substantial evidence" is a "term of art" used throughout
> administrative law to describe how courts are to review agency factfinding.
> Under the substantial-evidence standard, a court looks to an existing
> administrative record and asks whether it contains sufficient evidence to
> support the agency's factual determinations.  And whatever the meaning of
> "substantial" in other contexts, the threshold for such evidentiary sufficiency
> is not high.  Substantial evidence . . . is more than a mere scintilla.  It means—
> and means only—such relevant evidence as a reasonable mind might accept
> as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

"[T]his court considers evidence that detracts from the Commissioner's decision

as well as evidence that supports it."  *Nash*, 907 F.3d at 1089 (marks and citation

omitted).  "If substantial evidence supports the Commissioner's conclusions, this court

does not reverse even if it would reach a different conclusion, or merely because

substantial evidence also supports the contrary outcome." *Id.* "In other words, if it is possible to reach two inconsistent positions from the evidence, and one of those positions is that of the [ALJ], the Court must affirm the decision." *Jacob R. v. Saul*, No. 19-CV-2298 (HB), 2020 WL 5642489, at *3 (D. Minn. Sept. 22, 2020) (citing *Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992)).

## IV.    DISCUSSION

Plaintiff sets forth two categories of arguments in support of the Motion: (1) the ALJ erred by failing to identify all of his severe impairments, specifically his bipolar disorder and anxiety disorder; and (2) the ALJ failed to adequately address the supportability and consistency of Plaintiff's treating mental health provider, Dr. Varma. (*See* Dkt. 21.)

At the second step, the Commissioner considers the medical severity of a claimant's impairment(s). *See* 20 C.F.R. § 416.920(a)(4)(ii). If a claimant does not have a severe medical impairment, or a severe combination of impartments, lasting or not expected to last for a continuous period of at least 12 months, the Commissioner will find a claimant is not disabled. *Id.* It is a claimant's burden to demonstrate a severe medically determinable impairment at step two of the sequential evaluation, but that burden is not difficult to meet and any doubt about whether the claimant met his burden is resolved in favor of the claimant. *See Kirby v. Astrue,* 500 F.3d 705, 707-08 (8th Cir. 2007) (citation omitted); *David G. v. Berryhill*, No. 17-CV-3671 (HB), 2018 WL 4572981, at *4 (D. Minn. Sept. 24, 2018) (quoting *Dewald v. Astrue*, 590 F. Supp. 2d 1184, 1199 (D.S.D. 2008)). An impairment is not severe if it does not significantly limit

a claimant's physical or mental ability to do basic work activities. *See Kirby*, 500 F.3d at 707; 20 C.F.R. § 416.920(c); SSR 96–3p, 1996 WL 374181 (SSA 1996). The severity showing "is not an onerous requirement for the claimant to meet, but it is also not a toothless standard." *Kirby*, 500 F.3d at 708 (citation omitted).

In determining whether a claimant's mental impairments are "severe," the regulations require the ALJ to undergo a psychiatric review technique to rate the degree of the claimant's functional limitation as to the following four categories of functioning regarding the ability to: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 416.920a(c)(3); *see also Cuthrell v. Astrue*, 702 F.3d 1114, 1117 (8th Cir. 2013).

The regulations further provide:

> If we rate the degree of your limitation in the first three functional areas as "none" or "mild" and "none" in the fourth area, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.

20 C.F.R. § 416.920a(d)(1). Further, according to the Commissioner's regulations, the:

> [a]ssessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication, and other treatment.

20 C.F.R. § 416.920a(c)

Here, in looking at the areas of mental functioning of activities of daily living; social functioning; concentration, persistence, or pace, the ALJ found as follows:

The first functional area is understanding, remembering or applying information. In this area, the claimant has mild limitation. The claimant did not allege any limitations in his ability to understand, follow instructions, and with his memory. He reported that he was able to follow spoken and written instructions ok. He reported that he did not need reminders to care for his personal needs or to go places, but did need reminders to take his medications. He was able to prepare meals, handle money, and shop in stores (Ex. 4E). The record shows the claimant's memory was described as good (Ex. 13F/1). The claimant's ability to engage in these activities suggests no more than a mild limitation in the ability to learn, recall, and use information to perform work activities.

The next functional area is interacting with others. In this area, the claimant has mild limitation. The claimant alleged that he had difficulty getting along with others. He also stated that he did not get along with his father because he went to prison a lot. However, he testified that he cared for his dad and spent time with him. The claimant also indicated that he had been fired once for arguing with a boss. He also testified that he spent time with his girlfriend (Ex. 4E, Hearing Testimony). The record shows the claimant's behavior was described as appropriate and there is no indication that he had any difficulty getting along with his medical providers (Ex. 2F/5, 13F/1). The residual social functioning reflected in this evidence supports a reasonable inference that the claimant has no more than a mild limitation in the ability to relate to and work with others.

The third functional area is concentrating, persisting or maintaining pace. In this area, the claimant has mild limitation. The claimant alleged that he had limitations in his ability to complete tasks and to concentrate. He reported that he was able to pay attention for half an hour at a time. However, he also indicated that he was able to prepare meals, watch movies, handle money, and shop in stores (Ex. 4E). The record shows the claimant's attention was described as normal (Ex. 2F/5, 13F/1). This evidence supports a reasonable inference that the claimant has no more than a mild limitation in the ability to focus attention on work activities and stay on task at a sustained rate.

The fourth functional area is adapting or managing oneself. In this area, the claimant has mild limitation. The claimant did not allege any limitations in his ability to care for his personal needs due to mental health symptoms. However, he reported that he did not like changes in routine and did not handle stress well (Ex. 4E). The record shows the claimant's appearance was described as appropriate and neat (Ex. 2F/5, 13F/1). There is no indication the claimant had difficulty attending appointments or following his providers instructions. The claimant's ability to maintain his psychologically based

symptoms with only medication management supports a reasonable inference that the claimant has only a mild limitation in his ability to regulate his emotions, control his behavior, and maintain well-being in a work setting.

(R. 13-14.)

Plaintiff argues that the significant weight of the evidence supports greater than "mild" limitations in the four functional areas of applying or remembering information; concentration, persistence, or pace; interacting with others; and adapting or managing himself. (Dkt. 21 at 11.) Plaintiff points to Dr. McGuire's observation on April 11, 2018 that Plaintiff was very high energy and spoke very quickly along with Plaintiff's reports of a racing mind, anxiety and restlessness; Plaintiff's report to Dr. Varma in May 2018 of low mood, decreased interest, irritability, crying, low energy, distractibility, over-spending, decreased need for sleep, increased activity, disturbed sleep, decreased concentration, and muscle tension; Dr. Varma's 2019 diagnosis of bipolar disorder and generalized anxiety for Plaintiff, as well as the limitations of mood swings and anxiety that were expected to last a lifetime; the fact that Plaintiff was taking medication for his mental health conditions; reports of him being high strung with racing thoughts in July 2018 and August 2019; reports of his symptoms as part of the Rule 25 assessment; and Dr. Varma's September 2019 medical opinion form noting marked and extreme limitations in several areas, including his ability to get along with coworkers and supervisors, his ability to respond to routine pressures, and his ability to understand and remember directions. (Dkt. 21 at 9-11.)

While Plaintiff cites to diagnoses and several indicators of mental health issues, none of these—reported symptoms of tearfulness, irritability, and distractibility (amongst

14

others), or taking medications for anxiety and bipolar disorder—on their own or in combination dictate a per se conclusion of a severe impairment. *See Buckner v. Astrue*, 646 F.3d 549, 556-557 (8th Cir. 2011) (although the claimant was diagnosed with depression and anxiety, substantial evidence supported the ALJ's finding that depression and anxiety were not severe); *Melanee B. v. Kijakazi*, No. 20-CV-1179 (ECW), 2021 WL 4199333, at *22 (D. Minn. Sept. 15, 2021) (citations omitted) (indicators of mental health issues are not determinative of a severe impairment); *Wasen A. v. Saul*, No. 18CV03242SRNLIB, 2020 WL 823095, at *14 (D. Minn. Jan. 31, 2020) (quoting *Michlitsch v. Berryhill*, No. 17-cv-3470 (MJD/TNL), 2018 WL 3150267, at *14 (D. Minn. June 12, 2018)) ("Diagnoses alone do not demonstrate the existence of severe impairments."), *R. & R. adopted*, 2020 WL 818908 (D. Minn. Feb. 19, 2020); *Martin v. Astrue*, No. 09-cv-1998 (RHK/JJG), 2010 WL 2787437 at *6 (D. Minn. June 7, 2010) (citing *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir. 1990)) ("The mere presence of a medical condition is not per se disabling.  The claimant must also show that the condition causes functional limitations.").

The Court acknowledges that Dr. Varma's September 27, 2019 medical opinion form, as relied upon by Plaintiff, included marked and extreme limitations in several areas of functioning, including the ability to get along with coworkers and supervisors; the ability to respond to routine pressures; and the ability to understand and remember directions.  However, reliance on this medical opinion ignores Dr. Varma's medical examinations, including in a September 27, 2019 progress note, on the same day, where Dr. Varma opined as part of his mental health examination for Plaintiff that he presented

no risk to himself or others, he had an appropriate and neat appearance; his attention and concentration were normal; he showed good recent and remote memory, his eye contact and speech were normal, he showed appropriate behavior, his thought process was logical and coherent, he showed good insight and judgment, and he did not suffer from any hallucinations or delusions (R. 608-09). *See Kirby*, 500 F.3d at 707 (noting impairment is not severe if it "amounts to only a slight abnormality," and concluding claimant's impairments were not severe where objective testing was normal and there was little evidence to corroborate alleged functional limitations). Indeed, Dr. Varma did not deviate from this assessment as part of his examinations for each of Plaintiff's appointments from May 2018 through December 2019. (*See, e.g.*, R. 356, 678, 680, 682, 684, 686.) Moreover, while Plaintiff points to Dr. Varma's opinion to support a finding that he lacked the ability to get along with coworkers and supervisors, Dr. Varma's own assessment opined that Plaintiff posed no risk to himself or others, and Plaintiff admitted on multiple occasions that he was engaged in regular social contacts with family,[11] friends, and a steady girlfriend, even characterizing himself as very social (*see, e.g.*, R. 397, 628, 640, 647, 659). *See Johnston v. Apfel*, 210 F.3d 870, 874-75 (8th Cir. 2000) (substantial evidence supported ALJ's decision that claimant's mental impairments were non-severe in part based on the evidence that the claimant maintained good activities of daily living); *see also Thomas v. Berryhill*, 881 F.3d 672, 676 (8th Cir. 2018) ("Thomas's self-reported activities of daily living provided additional reasons for the ALJ to discredit

---

[11]    Plaintiff asserts his own brother fired him from the family bakery after four days of work (Dkt. 21 at 7), however, this was in relation to his inability to stand on his feet full-time, as opposed to an inability to get along with others (R. 45, 67-70).

Dr. Hollis's pessimistic views of her abilities."). Based on Dr. Varma's mental health assessments during his treatment, Plaintiff's reports of social activities and relationships, and the State Agency psychologist's findings of mild limitations, the Court finds that the ALJ's assessment that Plaintiff's bipolar disorder and anxiety disorder were not severe based on mild limitations as to Plaintiff's ability to understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself, is supported by substantial evidence in the record as whole. This Court cannot "reverse even if it would reach a different conclusion, or merely because substantial evidence also supports the contrary outcome." *Nash*, 907 F.3d at 1089.

Also important to this analysis, as well as to the RFC analysis, is Plaintiff's argument that the ALJ failed to address the supportability and consistency of Dr. Varma's opinion, as required by 20 C.F.R. 416.920c, when the ALJ determined that Dr. Varma's September 2019 opinion was not persuasive because it was purportedly not consistent with mental status exam findings, treatment notes, the claimant's subjective reports, and activities of daily living. (Dkt. 21 at 13-14.) According to Plaintiff, notably absent is any acknowledgement that Dr. Varma actually provided two medical opinions, one in May 2018 and a second in September 2019, with similar limitations. (*Id.* at 14.)

Because Plaintiff's claim was filed after March 27, 2017, the applicable regulation is 20 C.F.R. § 416.920c. *See David A. P. v. Kijakazi*, No. 20-CV-1586 (TNL), 2022 WL 980302, at *14 (D. Minn. Mar. 31, 2022). Pursuant to § 404.1520c:

> [An ALJ] will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources. When a medical

> source provides one or more medical opinions or prior administrative
> medical findings, [an ALJ] will consider those medical opinions or prior
> administrative medical findings from that medical source together using the
> factors listed in paragraphs (c)(1) through (c)(5) of this section, as
> appropriate. The most important factors we consider when we evaluate the
> persuasiveness of medical opinions and prior administrative medical findings
> are supportability (paragraph (c)(1) of this section) and consistency
> (paragraph (c)(2) of this section)

20 C.F.R. § 416.920c(a). Those factors include the supportability and consistency of

medical opinions and may consider the relationship with the claimant, specialization, and

other factors. 20 C.F.R. § 416.920c(c). According to the SSA's regulations:

> The factors of supportability (paragraph (c)(1) of this section) and
> consistency (paragraph (c)(2) of this section) are the most important factors
> we consider when we determine how persuasive we find a medical source's
> medical opinions or prior administrative medical findings to be. Therefore,
> we will explain how we considered the supportability and consistency factors
> for a medical source's medical opinions or prior administrative medical
> findings in your determination or decision. We may, but are not required to,
> explain how we considered the factors in paragraphs (c)(3) through (c)(5) of
> this section, as appropriate, when we articulate how we consider medical
> opinions and prior administrative medical findings in your case record.

20 C.F.R. § 416.920c(b)(2); *see also Andrew H. S. v. Kijakazi*, No. 20-CV-1553

(SRN/HB), 2022 WL 409954, at *9 (D. Minn. Jan. 24, 2022) ("The two most important

factors are supportability and consistency, which the ALJ must address explicitly."), *R. &*

*R. adopted*, 2022 WL 409951 (D. Minn. Feb. 10, 2022) (citing 20 C.F.R. §

416.920c(b)(2) (2017)).

> The SSA has described supportability and consistency as follows:

> (1) Supportability. The more relevant the objective medical evidence and
> supporting explanations presented by a medical source are to support his or
> her medical opinion(s) or prior administrative medical finding(s), the more
> persuasive the medical opinions or prior administrative medical finding(s)
> will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 416.920c(c)(1)-(2).

An ALJ is not required to explain the remaining factors unless the ALJ "find[s] that two or more medical opinions . . . about the same issue are both equally well supported . . . and consistent with the record . . . but are not exactly the same." 20 C.F.R. § 416.920c(b)(2)-(3)). The new articulation requirements are meant to "provide individuals with a better understanding of [the Commissioner's] determinations and decisions" and "provide sufficient rationale for a reviewing adjudicator or court." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 FR 5844-01, at 5854, 5858 (Jan. 18, 2017).

Here, as stated previously, Plaintiff has challenged the ALJ's finding as to the consistency of Dr. Varma's September 2019 opinion based on Dr. Varma's May 2018 opinion as to Plaintiff's functioning. In this regard, the ALJ found as follows:

Dr. Sujit Varma submitted a medical opinion on behalf of the claimant in September 2019. He concluded the claimant had extreme limitations in the ability to understand and remember detailed instructions, make judgments on simple work related decisions, and interact appropriately with supervisors. He opined the claimant was unable to concentrate and had marked limitations in several areas of social interaction (Ex. 8F). This opinion is not persuasive because it is not consistent with the mental status exam findings, treatment notes, the claimant's subjective reports, and activities of daily living including snow removal, chores, and odd jobs.

(R. 20.)

It appears that Plaintiff is relying on Exhibit 2F, which is a psychiatric evaluation of Plaintiff on May 11, 2018 (R. 362-368) that included in the review of symptoms reports of low mood, decreased interest, irritability, crying, low energy, distractable, spending, decreased need for sleep, increased activity, disturbed sleep, decreased concentration, and muscle tension (R. 362).[12]  However, Dr. Varma's mental status exam for that day found largely normal functioning, including that Plaintiff had an appropriate appearance; he was easily engaged; he showed appropriate eye contact; he had normal motor activity; his speech was normal; his mood was congruent; his thought process and content was normal; his association was intact; he had an average fund of knowledge; and his concentration, memory, cognition, insight and judgment were normal.  (R. 366.) Indeed, the ALJ relied on Dr. Varma's examinations as part of his assessment of Plaintiff's mental functioning, including as to interacting with others, concentrating, persisting or maintaining pace, and his ability with respect to adapting or managing oneself.  (R. 13 (citing Ex. 2F).)  In other words, the Court finds that the ALJ properly considered the consistency of Dr. Varma's September 2019 opinion given that Dr. Varma's mental examinations, including on May 11, 2018, were contrary to Dr. Varma's extreme September 2019 limitations for Plaintiff.  *See* 20 C.F.R. § 416.920c(c)(1)-(2).

---

[12]      Dr. Varma provided a medical opinion on March 4, 2019.  (R. 369-71 (Exhibit 3F).)  However, Plaintiff does not raise this opinion in connection with his challenge to the ALJ's treatment of Dr. Varma's September 2019 opinion.  (*See* Dkt. 21 at 13 ("Notably absent is any acknowledgement that Dr. Varma actually provided *two* medical opinions, one in May of 2018 and a second in September 2019, with similar limitations.").)  Based on Plaintiff's reference to "May of 2018," the Court understands Plaintiff to be referring to Dr. Varma's May 11, 2018 psychiatric evaluation.  (*See* R. 362-68.)

## V.    <u>RECOMMENDATION</u>

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED THAT**:

1.    Plaintiff s Motion for Summary Judgment (Dkt. 20) be **DENIED**;

2.    Defendant Acting Commissioner of Social Security Kilolo Kijakazi's

Motion for Summary Judgment (Dkt. 22) be **GRANTED**; and

3.    That the case be **DISMISSED WITH PREJUDICE**.

DATED: May 19, 2022                    *s/Elizabeth Cowan Wright*
                                       ELIZABETH COWAN WRIGHT
                                       United States Magistrate Judge

## <u>NOTICE</u>

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).